34  325
44  626
133s 300

NATHAN B. CRAIG

v.

ISAAC A. MILLER.

*Negotiable Instruments—Note—Surety — Application of Payments— Weight of Evidence—Instructions—Wife as Witness in Husband's Interest—Construction of Statute—Newly Discovered Evidence as Ground for New Trial.*

1. In an action against a surety upon a promissory note this court holds that the wife of the principal maker thereof was not a competent witness for the defendant; that the weight of evidence upon the matter of the application of the payments in question sustains the finding of the jury; and declines to interfere with their verdict in behalf of the plaintiff.

2. In the case presented, minor exceptions to the evidence and the motion for a new trial on the ground of newly discovered evidence, were properly overruled by the trial court.

[Opinion filed December 31, 1889.]

APPEAL from the Circuit Court of Jo Daviess County; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

Mr. M. Y. JOHNSON, for appellant.

Messrs D. & T. J. and J. M. SHEEHAN, for appellee.

LACEY, J.   This suit has been in this court three times before; once on the appeal of appellant, Craig, and twice on the appeal of the appellee, Miller.   The first time it was not reported.   The reports of the decisions on the last two appeals will be found in 16 Ill. App. 133, and in 23 Ill. App. 138.   The judgment was reversed on the last two appeals because of error in instructions and some other errors not going to the merits of the case.

The cause of action is based on a promissory note for $800 given by the appellant as surety, and his brother, W. R. Craig, as principal, to P. M. Spencer, of date May 4, 1870, drawing ten per cent interest from date, and indorsed by Spencer to appellee.   This suit was instituted May 4, 1880, against appellant alone.   There is but one cause of action, to wit, the note sued on.   Reversal is sought here on several grounds, among them that the verdict is against the weight of the evidence.   It appears that the defense was payment and settlement of all causes of action.   There were two payments made by W. R. Craig to appellee, one for $900 May 1, 1880, sent to appellee in draft by letter and payable to Spencer without any direction as to how it should be applied, and the other was payment of $1,700, made in person by W. R. Craig, the principal maker of the note, to appellee, May 3, 1880, for which appellee gave his receipt in full of his account against W. R. Craig (using the word *account* in the receipt), provided, if more was got from the State of Iowa, then W. R. Craig was to pay the balance of the account or its proportion.   At the time of these payments appellee held against W. R. Craig three separate claims: first, the note in suit, second, an account (or balance of an account) of P. W. Spencer against W. R. Craig for work and labor for $1,198.75, which on the

Craig v. Miller.

— of January, 1880, had been assigned by Spencer to appellees, and third, a judgment in Potawotamy county, Iowa.

The issue then was, first, whether the $900 ought to have been applied on the Spencer account held at the time by appellee against appellant or upon the note in suit; the appellant by his plea taking the affirmative, and maintaining that it should have been applied on the note, and the appellee the negative; second, was the payment of the $1,700 intended as between the parties to the payment to apply on appellee's entire demands, note, judgment and accounts, or on the judgment alone as appellee insists; and here also the appellant assumed the affirmative to show the former. The judgment alone was with interest nearly double the last mentioned payment. The evidence was sharply conflicting as to those questions, and while we are not prepared to say it would not have been sufficient to support a verdict in favor of the appellant if so rendered by the jury, we think a fair preponderance is in favor of appellee. We have formed our opinion from a careful examination of all the evidence and find no sufficient grounds to disturb the verdict for the alleged want of evidence to support it. It is not necessary, and it would extend this opinion to an unreasonable length to go over the evidence in detail. The court below committed no error in excluding or admitting evidence, as we think. It was not pertinent or proper for appellant to prove how much it was that appellee gave Spencer for the note or account. It was not material to the issue and might have prejudiced appellee's case if it had been shown that he purchased them for a small sum. It was not error to allow to be read before the jury, if done, the accounts of Spencer against Craig, which were assigned to appellee. The court did not admit them as evidence, and as there was ample proof that the account was correct and just, we can see no impropriety in letting the jury see what the accounts were composed of or what it was claimed they were composed of. The deposition of Mrs. Rowena Craig, the wife of W. R. Craig, as we think, was properly rejected, for the reason that it was offered as rebuttal evidence, when, if competent at all, it

should have been offered in chief. The portion, which was substantially all there was of it, that purports to prove that her husband and not appellee wrote the receipt, was immaterial, as there was no proof to show that the copy of the receipt retained by Craig was not a true copy. The deposition does not purport to state what was in fact included in the receipt. The giving of the draft to Spencer for his account, which was denied by Spencer, was not material and of no importance, as the claim due Spencer and assigned to appellee was not seriously disputed, and such draft, if given, was never paid. It is admitted by counsel for appellant in his brief, "the amount of the account was not contested; that the defendant knew nothing about it as he was not a party." Craig and Spencer both swore the account was about $1,200. The ruling of the court, therefore, even if the evidence had been proper and offered in proper time, and the witness competent, was not erroneous or harmful to appellant. It was not improper to exclude the deposition of Charles Craig for similar reasons.

This court in Miller v. Craig, 16 Ill. App. 133, held that Rowena Craig, wife of W. R. Craig, the principal maker of the note in suit, was not a competent witness to testify in his behalf or interest which he had directly in the event of the suit, she then being unqualified by reason of being his wife. We wish to be understood as adhering to that opinion, and all that was there said. We there called attention to the seeming adverse decision in Gravel Road Co. v. Madaus, 102 Ill. 417. We thought, and so held, the dissenting opinions filed by four of the judges considered that the court did not intend to be bound by the reasons given in the opinion filed by Judge Dickey. Two of the judges stated in a separate opinion that "Harms was a contractor and builder of the road, and afterward was superintendent. That being his true relation to the company he was a competent witness under the statute, and so was his wife. For this reason we concur in reversing the judgment." The other two dissents are not so plain but they did not agree to the reasoning in the opinion of the court. Harms being a contractor, builder and superintendent would not even be disqualified at common law; neither

Craig v. Miller.

would his wife. In such case the husband and wife would not be testifying for or against each other. In our judgment a majority of the court intended to leave the question open as to whether a wife would be competent to testify in a case where her husband, though not a party to a suit, was directly interested in the result thereof. The opinion in that case, written by Judge Dickey, seems to be based on the idea that a wife is competent to testify in cases where the husband had an interest in favor of the party calling her, in case he were not a party to the suit, making her competency or incompetency hinge upon the fact that he was or was not a party to the suit.

We may here remark that the common law made no such distinction, and why should the statute? The reasons for or against their testifying in either case are the same. The judge writing that opinion arrived at the conclusion by construing the first section of the statute by itself, leaving out of view the provisions of the fifth section, which is restrictive and at the same time affirmative. The opinion argues that as where a wife is called to testify for her husband's interest she is excluded at common law on account of joint interest with her husband, but where called to testify against it she is excluded on grounds of public policy, it is therefore concluded that the first section, in the first case named, qualifies her to testify in the last. In opposition to such view, we think such might have been the effect of it, if the first section were the only one, though with good reason it might be doubted. But when the section, as it ought to be, is construed with the fifth, it becomes clear that the Legislature, in using the words in the latter, "No husband or wife shall by virtue of section number one of this act, be rendered competent to testify for or against each other as to any transaction or conversation occurring during marriage except," etc., simply meant to leave the case as it stood at common law, and as though the first section had not intended to apply to the case of the testifying of husband and wife for or against each other, and the exceptions to the fifth section then qualify the husband and wife for or against each other in certain named cases. Evidently no such refined

distinction was intended as is attempted to be drawn in 102 Ill., cited above. A wife called to testify for or against her husband's interest, whether he be party to the suit or not, should be excluded from testifying.

In Mueller v. Rebhan, 94 Ill. 148, Sec. 1, it is held: "That section was intended by the Legislature to be used in a sense so broad as to admit husband and wife to testify for or against each other as other witnesses, except in so far as the act should otherwise provide; and hence the limitations found in Sec. 5, confining such witnesses to specified cases." Then the opinion says that Sec. 5 contains affirmative legislation which the court enumerates as in the section provided. This same view is taken in Treleaven v. Dixon, 119 Ill. 549. In this case the court recites the entire Sec. 5, the last clause of which, after giving the husband the right to testify in such case as is named, recites " In all which cases the husband and, wife may testify for and against each other in the *same manner as other parties* do under the provisions *of this* act. The clear inference is that husband and wife are not allowed to testify for or against each other save as Sec. 5 allows, and even in that they are restricted the same as other parties. See also Way v. Harriman, 126 Ill. 132, which holds that in a case where the litigation is concerning the separate interest of the wife and the wife is disqualified under another section of the statute on account of the opposite party prosecuting as the administrator and heir of a deceased person, the husband, who is not a party, is also disqualified—a common law disqualification which is retained, as it would seem, by virtue of Secs. 1 and 5. It is conceded in the minority opinion in 102 Ill. in Gravel Road v. Madaus, *supra*, that the Supreme Court has decided "In cases where the husband and wife is a party to the action, the other can be a witness *in all* the cases in which it is so provided in Sec. 5, and neither can be a witness against the other where the other is a party to the record, in any case other than those pointed out in Sec. 5." Now, Sec. 1 provides that " No person shall be disqualified as a witness in any civil action, suit or proceeding except as hereinafter stated, by reason of his or her interest in the event thereof, as party or

Craig v. Miller.

otherwise." The same language in the above section that enables a husband or wife to testify in case the other is a party to a suit, applies equally to cases where the other is only interested, and not a party. Then Sec. 5 in again restricting this right to testify, makes no distinction, as we can see, between the case where a husband or wife is a party, and the case where the husband only, is directly interested in the event of the suit, and the wife is called to testify in favor of his interest, or against his interest; nor does the clause requalifying the husband and wife in certain cases, make any such distinction. The majority of the court in the case above named, seeing no reasonable cause for the distinction, and desiring to keep in harmony with former decisions, refused to indorse the reasoning of the opinion of Judge Dickey, but simply held the witness, Mrs. Harms, qualified, on the ground alone that her husband's interest was not such as to disqualify her. And, as we said in 16 Ill. App., we do not regard that opinion authority for holding that a wife is competent to testify, as in this case, for her husband, as to a "transaction or conversation," occurring during their marriage, where he was directly interested.

As we construe the statute, and as a logical deduction from all the opinions of the Supreme Court, and in accordance with the provisions of the statute as we understand it, we must hold that the wife of W. R. Craig was not a competent witness, and that the court did not err in excluding her deposition.

The appellant complains that the court erred in modifying his 1st, 2d, 3d, 4th, 5th, 8th, 9th and 10th instructions and also in refusing to give the 2d and 3d refused instructions. We have examined those instructions and carefully weighed all the objections to the modifications and arguments in favor of giving the refused instructions, and without going into detail we can say that in the action of the court therein we find no error. We think all the modifications properly made and necessary to fully enlighten the jury on the questions at issue. The instructions refused were properly so.

The grounds urged by appellant for a new trial on account

of newly discovered evidence we deem clearly insufficient. In order to contest the validity of the Spencer account to its full amount, it is proposed to introduce the books of the construction of the asylum in which it is claimed the entire account of Spencer was kept, showing, if the credits had been allowed, the whole amount of indebtedness would have been about as sworn to by them and there would only be about $234.95 on the Spencer account instead of $1,198.75. This evidence, if produced, would not be conclusive by any means, and for that reason it is not sufficient ground for a new trial. The jury might reasonably believe appellee's witnesses after such evidence had been introduced. Again, after so long a time and so many trials, it is doubtful if due diligence had been used in hunting up these books. We feel that the judgment in this case is just and find no sufficient error on which to reverse it. The judgment is therefore affirmed.

*Judgment affirmed.*

Motion to require appellant to pay costs of additional abstracts overruled.