Ruffin, C. J.
 

 The evidence fully sustains the statements of the bill. The deed bears date December 23rd 1S46, and is witnessed by two persons, who say, that one of them prepared it, and that, after execution, it was left with him for safe keeping for the children, with a request to both of them not to let the intended husband, the plaintiff, nor any person know of it until after the.marriage— the wife saying, that she had worked for the property and wished her own children to have it, and not to leave it under the control of her husband, if she should marry, as she expected to do. Those witnesses state, that they were present at the marriage the next day, and each of them says, he did not communicate to the plaintiff the existence of the deed. One of them, however, states that he gave information of the circumstance to the person who married them, and who was the administrator of the wife’s first husband : and that person says, that the bond for the wife’s purchases was still due to him, and that he did not tell the plaintiff of the deed, and that he had been sorry ever since that he- did not, as he did not believe the plaintiff knew it, and he did not think it right that he should he so cheated.
 

 The evidence brings this case within the restricted rule, on which the Court acted in
 
 Logan
 
 v.
 
 Simmons,
 
 3 Ire. Eq, 487 ; for there is not only a secret conveyance, but such secrecy was expressly designed to deceive the intended husband, and did deceive him as to the state of the wife’s property. He was therefore, to use the language of the writness, cheated, and is entitled to have the conveyance put out of his way, which would have the effect, if it stood, of making, the cheat successful. Since the decision of
 
 *361
 
 that case it is found, that the general question has again-come up for consideration in England, whether conceal*'• ment .of itself would not render a conveyance by a woman,•• pending the treaty of marriage, of all her property-for her separate use or for the benefit of children, fraudulent; - and it is very obvious, that the opinion of Vice-Chancel- * lor WiGRAM strongly inclines to the affirmative..
 
 Taylor
 
 v.
 
 Pugh, 1
 
 Hare 608. He refers to the rule laid down by Mr. Roper, which was quoted in
 
 Logan
 
 v.
 
 Simmons,
 
 and-says, he takes it to be correctly stated, as the rule of the Court; and then he says, that the several circumstances, which have been sometimes thought material to negative the imputed fraud, such as the poverty of the husband,. the want of a settlement from him, the reasonable character of the wife’s settlement upon the children of a former marriage, and the ignorance of the husband that the wife owned the property, may, indeed, be material con-; siderations for the guidance of the parties, as to the manner in which the wife’s fortune should be settled: but’ that they should constitute a reason for concealing the arrangement from the husband, he professes that he cannot comprehend, nor that the concealment should- be treated as immaterial. Certainly those are forcible expressions and seem to be just views. For, fraud has been aptly described to be, “what is done in secret, and when there is a concealment from the party in a matter which concerns his interest.”
 
 Tyrrell
 
 v.
 
 Hope, 2
 
 Ath. 560. In this country there has been no case, in which it has been held or intimated, that such a conveyance, whereby a woman makes herself destitute, or bestows all upon herself to the entire exclusion of the intended husband, ought, if concealed, to stand against his marital rights and just expectations ; but there are divers cases to the contrary and strongly so.
 
 Ramsay
 
 v.
 
 Joyce,
 
 1 McMul. Eq. 237.
 
 Manes
 
 v.
 
 Durant,
 
 2 Rich. Eq. 404.
 
 Tucker
 
 v.
 
 Andrews, 13
 
 Shep. 124. In the latter case it was held, indeed,
 
 *362
 
 that though the husband was entitled to relief, yet a suitable provision should be secured to the wife ; a doctrine which for very sufficient reasons does not prevail in our law. In this case there was an intentional and practised concealment, for the express purpose of preventing the intended husband from a choice of acting as he might, if he knew all. As to the idea, that the children can hold under the deed upon the ground of their innocence of any fraud; it is altogether inadmissible. Lord Chief-Justice Wilmot said in
 
 Bridgeman
 
 v.
 
 Green,
 
 Wilm’s notes 64, that, though not a party to an imposition, whoever receives any thing by means of it must take it tainted with the imposition : partitioning and cantoning it out among relation and friends will not purify the gift, and protect it against the equity of the person imposed upon. Let the hand receiving it be ever so chaste, yet, says he,
 
 if it
 
 comes through a polluted channel, the obligation of restitution ■will follow it. That principle has been applied in
 
 Harris
 
 v.
 
 Delamar,
 
 3 Ire. Eq. 219, and several other cases in this Court; and it refutes entirely the argument relied on for the defendants.
 

 The plaintiff is entitled to the decree he asks ; but, of course, without costs.
 

 Per Curiam.
 

 Decree accordingly.