*282
 
 PearsoN, J.
 

 To entitle the plaintiff to the aid of this Court in carrying into effect the marriage articles executed by the defendant and the sister of the plaintiff, it is necessary for him to allege and prove that the instrument was executed by the defendant deliberately and without surprise or imposition. The plaintiff makes the allegation, but it is denied by the defendant, who avers that the execution of the instrument was obtained from-him both by surprise and imposition, for that the subject was never mentioned to him until the parties were on the floor to be married ; that he was surprised, confused, and was in the act of going off without being married, whereupon, being told by the magistrate that the paper would not be valid unless he had it registered, and believing lie would afterwards have his election either to have it registeied or not, he leaves it to be inferred that he did sign it, and the parties were then married. He kept the paper, apd never did have it registered. There is a want of fairness about the answer, particularly in reference to the fact of making his mark to the instrument, which is calculated to prejudice the defendant’s case, and can only be accounted for by the fact of his being a weak old man, upwards of eighty years of age.
 

 The plaintiff has failed to prove his allegation.
 

 There are these circumstances worthy of consideration : — 1st. Marriage settlements are usually made to provide for the wife and to guard against the husband’s going in debt and spending the property, and after the death of the wife to provide for the issue of the marriage. Both these inducements were wanting in this case, the husband was upwards of sixty, and the wife upwards of fifty years of age, so that there was no probabilitj^ of issue, and the husband was a hard-working steady man, well to-do in the world. 2nd. The wife owned no property but a negro woman and child. She and her children are the subject of this controversy, consequently the allegation that the -husband was willing to take this negro girl and raise her and her children for his wife’s brothers or sisters ought to be satisfactorily proved, because it was unreasonable in the wife to ask it, and a hard bargain on him. 3rd. About two years after the marriage, the wife, without the knowledge of the husband, executed a deed of gift for the negroes to the plaintiff, who was her brother; and it was
 
 *283
 
 agreed between them and the Witnesses that it should be kept secret, and it did not come to the knowledge of defendant until af* ter her death, a period of some fifteen years. Why this profound secrecy if the matter had been fully understood and agreed upon before the marriage, and why did not the plaintiff, after he had acquired an interest under the marriage agreement, call upon the defendant and insist upon having it registered?
 

 The only direct evidence in relation to the execution of the contract, is that of one Edney, Justice of the Peace, who married the parties ; he gives a very short and unsatisfactory account of it — says he went to Mrs. Steele’s, where her sister, the intended wife of the defendant lived, for the purpose of performing the marriage ceremony, and was requested by Mrs. Steele to draw a marriage contract, whiqh he did, and the parties executed it. He thinks he told the defendant it Would not be binding unless it was registered. After it was signed the defendant kept the paper. This evidence, so far from showing that the contract was entered into deliberately, tends to support the averment of the defendant, that he was induced to execute it by surprise and imposition.
 

 There is no direct proof that the subject was ever spoken of before the parties met for the purpose of being married.
 

 The other testimony consists of conversations had with the de^ fendant many years afterwards, when he was so old and imbecile as scarcely to be able to connect his ideas, and is consequently, entitled to no weight.
 

 Per Curiam. Bill dismissed with costs.